[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14813
Non-Argument Calendar

_____

D.C. Docket No. 6:12-cr-00077-JA-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LOTTIE DAVIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 25, 2013)

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Lottie Davis appeals her sentence of 20 months of imprisonment for one

count of conspiring to make, pass, or possess a counterfeit security and to commit

bank fraud, 18 U.S.C. §§ 1344, 513(a), 371, two counts of bank fraud, id. §§ 1344,

2, and four counts of making, passing, or possessing a counterfeit security, id. §§ 513(a), 2.  Davis challenges the enhancement of her sentence for obstruction of justice based on perjury and the destruction of material evidence.  See United States Sentencing Guidelines Manual § 3C1.1 (Nov. 2011).  We affirm.

After federal agents learned of a scheme to defraud Target stores, their investigation revealed that Davis participated in a conspiracy in which Baresha Williams, Lavitress Williams, and others purchased merchandise using counterfeit cashier's checks and later returned the merchandise to obtain cash.  Agents obtained surveillance videotapes depicting some of the transactions and showing Davis and her vehicle at several of the Target stores.

At trial, Jeffery Starnes, an agent of the Secret Service, testified about Davis being cagey during her interview.  Davis identified herself and her vehicle in still images obtained from the surveillance videotapes, but denied any wrongdoing.  According to Agent Starnes, Davis remarked spontaneously, "I didn't make all the checks," but then denied producing any cashier's checks.  Agent Starnes also testified that Davis gave evasive and inconsistent responses to questions about how many computers she owned.

According to Agent Starnes, Davis admitted some involvement in the conspiracy, but said that Baresha had created the counterfeit cashier's checks and had ordered Davis to destroy the computer used to produce the checks.  Davis

admitted that she had supplied the computer and printer that Baresha used to produce the counterfeit checks; she had allowed Baresha to print counterfeit checks two or three weeks earlier; and she had transported the Williams sisters to several Target stores. Davis also admitted to disposing of the hard drive and computer after being instructed to do so by Baresha. Davis took Agent Starnes to the gas station where she allegedly had disposed of the hard drive, but they were unable to retrieve it.

At trial, Baresha testified that Davis had been a leader in the conspiracy, had attempted to evade detection, and had decided to dispose of the computer. Baresha testified that Davis and her sister had recruited her to join the conspiracy; Davis received half the proceeds of the fraud; Davis created the cashier's checks using a desktop computer at her office; Davis often drove her car to the Target stores and helped the Williams sisters select items to purchase; and Davis returned an item to Target on one occasion. According to Baresha, when Lavitress got caught trying to use a counterfeit cashier's check at a Target store in DeLand, Florida, Davis left Lavitress and wandered inside the store as several Target employees followed Lavitress outside the store. Eventually, Davis had to walk past the store employees to join her cohorts at her car. As Davis drove away, she noticed that the car was low on gas and agreed with her cohorts not to stop at a gas station because the police might be looking for them. After agents arrested Baresha, she called Davis

3

and warned her that the police "kn[ew] everything."  Davis said that she would go to her office immediately and destroy her computer, printer, and the check paper. Baresha testified that she did not know how to dispose of a hard drive and denied telling Davis to destroy the evidence.

Davis testified and denied knowledge of or participation in the conspiracy. Davis acknowledged that she returned an item to Target for Lavitress, but Davis explained that she did so because Lavitress did not have a valid identification card. Davis testified that she learned that the Williams sisters were doing something illegal at the Target store in DeLand, Florida.  According to Davis, she transported the Williams sisters to the store, shopped briefly with them, and then walked to the clothes department after observing Lavitress leave a register where the cashier was on the telephone.  Suddenly, Davis received a telephone call from Baresha, who said that store management had called the police and Davis had to return to her car. Inside the car, Baresha, Lavitress, and Lavitress's daughter began yelling at Davis about which direction to drive, and the three women insisted on leaving the store although the car was low on gas.

Davis testified that she disposed of the computer after receiving a call from Baresha, who said she was being framed by Lavitress and she needed Davis to "clean up" her computer, remove the hard drive, and throw it away.  Davis said she did not "know [she] was throwing away property that had any wrongdoing on it"

4

and discarded the computer only because she panicked and "didn't want nobody coming to bother [her] about anything." Davis also stated that she had not thought she was doing anything wrong by disposing of the computer because it was her personal property.

Davis also provided an implausible explanation for the incriminating statements she made to Agent Starnes. Davis testified that Agent Starnes asked if she or others had produced checks at her office, to which she responded, "if checks got made in my office, I'm pretty sure all of them didn't get made in there." Davis explained that she made the statement because "I could have been asked, did Baresha make any checks — I don't know." When another agent asked a follow-up question about her making all the checks, Davis replied, "I didn't say that. I said if there were any made in my office, I'm pretty sure all of them wasn't made there because [Baresha] wasn't there that much." When asked to explain why she told Agent Starnes that Baresha produced checks a few weeks before her interview, Davis testified, "[t]he question I remember was when the last time she was at my office. And I said, maybe two or three weeks ago. I don't remember him asking me when the last time she made checks there." On cross-examination, Davis denied saying that she knew Baresha was using her computer to make fraudulent checks.

At trial, the jury discredited Davis's testimony and convicted her of all charges against her. Davis's amended presentence investigation report included in her adjusted offense level a two point enhancement for obstruction of justice, U.S.S.G. § 3C1.1. The report based the enhancement on Davis's false testimony at trial and her disposal of the hard drive of her computer. Based on an adjusted offense level of 15 and a criminal history of I, the report provided an advisory guidelines range between 18 and 24 months of imprisonment.

Davis objected to the enhancement for obstruction of justice, but the district court overruled her objection. The district court found that Davis's testimony was "not truthful," "was inconsistent inherently, . . . [and] with the facts of the case, including the testimony of other witnesses." Even so, the district court hesitated to base the enhancement "on [that] only" because "testimony can be interpreted different ways" and Davis's testimony was not "identical to the testimony of other witnesses." The district court also found that Davis had destroyed the computer, which was "classic obstruction of justice." The district court ruled that the two-point enhancement was "appropriate . . . for both reasons . . ., but most certainly for the destruction of the computer."

The district court did not clearly err in enhancing Davis's sentence for obstruction of justice. A defendant is subject to a two-level increase if she "willfully obstructed or impeded, or attempted to obstruct or impede, the

6

administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Davis testified that she knew the Williams sisters had been engaged in illegal activities for months before she disposed of her computer, yet she destroyed the computer at Baresha's request. See id. § 3C1.1 cmt. n.4(D) & n.6. When Davis dismantled the machine and discarded the hard drive that stored information about how long and how many counterfeit checks had been produced, she "destroy[ed] the most incriminating evidence against her" and her cohorts. United States v. Massey, 443 F.3d 814, 821 (11th Cir. 2006). And Davis was subject to the enhancement for "committing . . . perjury." U.S.S.G. § 3C1.1 cmt. n.4(B). Davis's testimony was internally inconsistent, irreconcilable with her earlier admissions to Agent Starnes, and implausible. See United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002). For example, Davis admits she "voluntarily acknowledged [to Agent Starnes] that the computer (her computer) was in fact used to make the [cashier's] checks," but Davis testified that she had been unaware her computer "had any wrongdoing on it" and that she had not known Baresha used her computer to make fraudulent checks. Davis's conduct and testimony warranted an enhancement for obstruction of justice.

We **AFFIRM** Davis's sentence.

7